UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

CHARLES GREGORY EMLEY,

    PLAINTIFF,

v.

EQUIFAX INFORMATION SERVICES, LLC,

    DEFENDANT.

Case No.: 3:23-cv-2832

**_JURY DEMAND_**

## COMPLAINT

Plaintiff Charles Gregory Emley ("Mr. Emley" or "Plaintiff"), by and through the undersigned counsel, and with knowledge as to Plaintiff's own acts, upon information, belief, and investigation of counsel as to the acts of others, believing such allegations have evidentiary support after a reasonable opportunity for further investigation or discovery alleges against Defendant Equifax Information Services, LLC ("Equifax" or "Defendant") as follows:

### PRELIMINARY STATEMENT

1. This is an action for an actual, statutory, and punitive damages, costs, and attorneys' fees pursuant to 15 U.S.C. §§ 1681, *et seq*. ("Fair Credit Reporting Act" or "FCRA").

2. One of the fundamental purposes of the FCRA is "to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information in accordance with the requirements of this subchapter." 15 U.S.C. § 1681(b).

1

3. The FCRA requires that when a consumer reporting agency, such as Equifax, prepares a consumer report, it must "follow reasonable procedures to assure the maximum possible accuracy of the information concerning the individual about whom the report relates. 15 U.S.C. § 1681e(b).

4. Accordingly, "[t]he FCRA evinces Congress' intent that consumer reporting agencies, having the opportunity to reap profits through the collection and dissemination of credit information, bear 'grave responsibilities.'" *Cushman v. Trans Union*, 115 F.3d 220, 225 (3d Cir. 1997).

5. Surveys have shown "between 1998 and 2003, approximately 27.3 million adults discovered they were victims of identity theft, with 9.91 million adults discovering they were victims in 2003 alone." *Id.*

6. On December 4, 2003, President George W. Bush signed into law the Fair and Accurate Credit Transactions Act ("FACTA").[1] This legislation gives consumers unprecedented tools to fight identity theft and continued access to the most dynamic credit markets in the world. With a free credit report and powerful new tools to fight fraud, consumers can better protect themselves and their families.[2]

7. The stated purpose of FACTA is "to prevent identity theft, improve resolution of consumer disputes, improve the accuracy of consumer records, make improvements in the use of, and consumer access to, credit information, and for other purposes."[3]

---

[2] https://georgewbush-whitehouse.archives.gov/news/releases/2003/12/20031204-3.html   Last visited December 21, 2023.

[3] https://www.govinfo.gov/content/pkg/PLAW-108publ159/pdf/PLAW-108publ159.pdf Last visited December 21, 2023.

8. In 2004, according to the Federal Bureau of Investigation, "[i]dentity theft is one of the fastest growing crimes in the U.S., claiming more than 10 million victims a year.[4]"

9. Between 2000 and 2014, the Federal Trade Commission ("FTC") identified identity theft as the number one complaint made to the FTC.[5] In 2022, identity theft complaints again were the number one category of all complaints made to the FTC.[6]

10. In furtherance of its underlying purposes, the FCRA sets out requirements and obligations that consumer reporting agencies ("CRAs") must follow when consumers dispute the accuracy of any item of information reported in their credit reports. *See* 15 U.S.C. § 1681i.[7]

11. The FCRA also "provides the primary recourse for victims of identity theft." Christopher P. Couch, *Forcing the Choice Between Commerce & Consumers: Application of the FCRA to Identity Theft*, 53 Ala. L. Rev. 583, 587 (2002).

12. Thus, the FCRA holds CRAs responsible for taking reasonable steps to correct a consumer's credit report once the theft is brought to their attention. *See Sloane v. Equifax Info. Services, LLC*, 510 F.3d 495, 506-07 (4th Cir. 2007) ("Of course, Equifax bore not responsibility for the initial theft, but the FCRA makes the company responsible for taking reasonable steps to correct [the plaintiff]'s credit report once she has brought the theft to the company's attention.").

---

[4] https://archives.fbi.gov/archives/news/stories/2004/october/preventidt_102104 Last visited December 21, 2023.

[5] https://www.ftc.gov/news-events/press-releases/2016/03/ftc-releases-annual-summary-consumer-complaints Last visited December 21, 2023.

[6] https://www.ftc.gov/reports/consumer-sentinel-network-data-book-2022 Last visited December 21, 2023.

[7] Furnishers have their own independent duties under the FCRA, principally those found at 15 U.S.C. § 1681s-2.

3

13. FACTA imposes additional duties on CRAs to repair the damage done to identity theft victims' credit files by blocking information that is the result of identity theft.

14. Specifically, CRAs are required to block the reporting of any information in the file of a consumer that the consumer identifies is a result of identity theft, not later than 4 business days after receiving (1) appropriate proof of identity; (2) a copy of the identity theft report; (3) the identification of such information by the consumer; and, (4) a statement by the consumer that the information is not information relating to any transaction by the consumer.  15 U.S.C. § 1681c-2(a).

15. The ability to obtain a "block" of information is especially important to consumers because once a block is in place, the account is permanently removed from the consumer's credit report and creditors are prohibited from sending the blocked account to collections. *See* 15 U.S.C. § 1681m(f). On the other hand, when a dispute is made without a claim of identity theft may result in the deletion or suppression of an account, but the creditor may continue with collection efforts. *See* 15 U.S.C. § 1681i.

16. A CRA may decline to "block" disputed information only if the CRA reasonably determines that the consumer's request is based on a material misrepresentation or made in error. *See* 15 U.S.C. 1681c-2(c)(1). When a CRA declines to block information disputed pursuant to § 1681c-2(a), the CRA must notify the consumer, in writing, of the business name and address of any furnisher that it contacted upon receiving the identity theft report and that the consumer has a right to add a statement to the file disputing the accuracy or completeness of the disputed information. *See* 15 U.S.C. §§ 1681c-2(c)(2) and 1681i(a)(5)(B).

17. When a CRA does not determine that a material misrepresentation or error occurred, it cannot decline to block before it requests additional information from the consumer

for the purpose of determining the validity of the alleged identity theft. *See* 12 C.F.R. § 1022.3(i)(1)(iii)(A).

18.  "[I]f a CRA receives a police report containing detailed information as well as the signature, badge number, or other identifying information for the officer taking the report, it is not reasonable for the CRA to request additional information without 'an identifiable concern,' such as an indication that the report was fraudulent." *Osada v. Experian Info. Solutions, Inc.*, No. 11-C-2856, 2012 WL 1050067, at *3 (N.D. Ill. Mar. 28, 2012) (citing 16 C.F.R. § 603.3(c)(1) (renumbered at 12 C.F.R. § 1022.3(i)(3)(i)).

19.  Despite the FCRA's requirements, Equifax regularly declines to block the reporting of fraudulent information by wrongfully rejecting valid identity theft reports outright and relying instead on the same verification process it uses for non-identity theft disputes.

20.  In violation of the FCRA, Equifax willfully and negligently failed to provide Mr. Emley the notice required by 15 U.S.C. § 1681c-2(c)(2) after declining to block information that, pursuant to 15 U.S.C. § 1681c-2(c)(1), Plaintiff alleged is the result of identity theft.

21.  In further violation of the FCRA, Equifax willfully and negligently declined to block the reporting of information alleged by Mr. Emley to result from identity theft in violation of 15 U.S.C. § 1681c-2(a), despite receipt of all required documentation from Plaintiff.

22.  The plain language of § 1681c-2 is clear, and Equifax is on notice of its requirements, both from the guidance of the FTC and the prior decision in *Osada v. Experian Info. Solutions, Inc.*, No. 11-C-2856, 2012 WL 1050067, at *3 (N.D. Ill. Mar. 28, 2012).

23.  According to standardized policies and procedures, Equifax willfully treats valid identity theft claims as regular credit report disputes.

24. Any identity theft claims Equifax deems to be lacking in information, it willfully, and according to its own standardized policies and procedures, declines to block the reporting of the fraudulent information outright rather than requesting additional information or documentation directly from the consumer (as it did with Mr. Emley) and as required by 12 C.F.R. § 1022.3(i).

25. Notwithstanding, Equifax has been sued thousands of times wherein an allegation was made that it violated the FCRA.

26. Equifax has been ordered in single plaintiff FCRA lawsuits to produce discovery responses on the number of times it has been sued.

27. "Evidence that a defendant has repeatedly engaged in prohibited conduct while knowing or suspecting that it was unlawful would provide relevant support for an argument that strong medicine is required to cure the defendant's disrespect for the law." *Dalton v. CAI*, 257 F.3d 409, 418 (4th Cir. 2001) (noting that whether "other consumers have lodged complaints similar to Dalton's against CAI" is relevant to willfulness under the FCRA).

28. Likewise, prior to this lawsuit, Equifax received consumer complaints directly from consumers and indirectly from the Better Business Bureau and government agencies concerning other similar incidents.

29. Notwithstanding thousands of consumer complaints, the sale of consumers' most private and sensitive personal and financial information is a multi-billion-dollar industry for the defendant.

30. Equifax Information Services, LLC reported $ 5,122,000.000.00 (5.1 billion) in revenue for 2022.[8]

---

[8] https://d1io3yog0oux5.cloudfront.net/_807c082bf071acdf179103742e11ae70/equifax/news/2023-02-08_Equifax_Delivers_Record_2022_Revenue_of_5_122_1275.pdf Last visited December 21, 2023.

## JURISDICTION & VENUE

31. This Court has jurisdiction pursuant to 15 U.S.C. § 1681p and 28 U.S.C § 1331.

32. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to Mr. Emley's claims occurred in this judicial district and division.  Plaintiff communicated with Equifax concerning the disputed information from this judicial district. Equifax sent communications concerning Mr. Emley's disputes to Plaintiff in this judicial district.

## PARTIES

33. Mr. Emley is an adult individual and a resident of this judicial district. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1681a(c).

34. Defendant Equifax regularly does business in this judicial district and is a Georgia corporation with its principal place of business located at 1550 Peachtree Street NW, Atlanta, Georgia 30309.  Equifax is a consumer reporting agency as defined by 15 U.S.C. § 1681a(f).

## FACTUAL ALLEGATIONS

35. Plaintiff is a victim of identity theft.

36. In or around 2021, an impostor applied for accounts using some of Mr. Emley's personal identifying information ("PII").

37. Plaintiff reported the identity theft to law enforcement, including the Dallas Police department and Federal Trade Commission.

38. Mr. Emley's Equifax credit reports include inaccurate information due to fraud, including but not limited to an account with a debt collector and inquiries made by Sam Pack's Auto Group, My Community FCU, Americredit Financial Services, Capital One, JPMCB - Auto

Finance, Ally Financial, Wells Fargo Dealer Services, Mechanics Bank and Citizens Bank (hereinafter, the "Inaccurate Information").

39. The Account is inaccurate because the items of information do not belong to Mr. Emley.

40. Mr. Emley did not apply for, authorize someone on his behalf to apply for credit with, or receive any goods, benefits, or services in connection with the collection account.

41. The Inquiries are inaccurate because Mr. Emley did not apply for credit with or authorize these companies to obtain his credit report from Equifax.

42. Upon information and belief, the Inaccurate Information on Plaintiff's Equifax report is the result of identity theft.

43. Mr. Emley disputed the Inaccurate Information to Equifax.

44. Notwithstanding, Equifax failed to delete the disputed inaccurate information or fully, reasonably, properly reinvestigate Plaintiff's disputes or block each of the disputed items of information.

45. Thereafter, Equifax prepared consumer reports related to Mr. Emley that included some or all the Inaccurate Information after receipt of Plaintiff's disputes.

46. The Inaccurate Information harms Mr. Emley's credit reputation because the credit history does not accurately depict Plaintiff's credit history or creditworthiness, or both.

*Plaintiff's Experience with Equifax*

47. During the two years preceding the date of Plaintiff's Complaint, Mr. Emley disputed the inaccurate information to Equifax on more than three occasions.

48. In support of his disputes, Plaintiff provided Equifax with his PII, a Dallas Police report, police report and other supporting documents.

49. Equifax purportedly completed its reinvestigations of the disputed Inaccurate Information.

50. Equifax generated at least one dispute results stating the Inaccurate Information remained on Plaintiff's file.

51. Equifax did not contact third parties, including but not limited to law enforcement or the persons who obtained Plaintiff's consumer reports, or both, concerning the accuracy of the disputed information.

52. Equifax also did not review underlying account documents related to the Inaccurate Information contained in Plaintiff's file or the subject of Plaintiff's disputes, or both, such as the PII used to apply for the accounts or the applications for credit, or both.

53. Equifax did not conduct any handwriting analysis on Plaintiff's signature or the signature on the application for the Account.

54. Equifax did not make a reasonable inquiry into the disputed information.

55. Equifax did not review all relevant information provided by Plaintiff related to the disputed information.

56. Equifax failed to modify or delete all the inaccurate information.

57. On at least one occasion, Equifax refused to reinvestigate Plaintiff's dispute and misrepresented to him that the PII he provided Equifax did not match the PII on Equifax's file.

58. Plaintiff provided Equifax with an identity theft report in support of his dispute of the Inaccurate Information.

59. On at least one occasion, Equifax failed to block the disputed information after receipt of an identity theft report or notify Mr. Emley of the business name and address of any

person it contacted upon receiving the identity theft report and that Plaintiff has a right to add a statement to the file disputing the accuracy or completeness of the disputed information.

60. In the two years preceding the date of Plaintiff's Complaint, Plaintiff notified Equifax that he was a victim of identity theft.

61. In the two years preceding the date of Plaintiff's Complaint, Equifax added an initial 1-year fraud alert to Plaintiff's file.

62. After Equifax added the fraud alert to his file, Plaintiff requested Equifax to provide him with his file on no less than two occasions. Equifax received Plaintiff's requests for his file.

63. During the relevant time period, and on no less than two occasions, Equifax failed to provide Plaintiff with his file.

64. During the relevant time period, Equifax prepared consumer reports related to Plaintiff that included the Inaccurate Information.

65. Despite Plaintiff's exhaustive efforts to date, Equifax has nonetheless deliberately, willfully, intentionally, recklessly, and negligently repeatedly failed to perform reasonable reinvestigations of the above disputes as required by the FCRA.

66. As of result of the Equifax's conduct, Plaintiff has suffered multiple concrete and particularized injuries that are unique and distinct in the form of adverse credit action, damage to his credit worthiness, lowered his credit scores, loss of time, out-of-pocket expenses and emotional distress.

67. At all times pertinent hereto, Equifax was acting by and through its agents, servants and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the defendant herein.

68. At all times pertinent hereto, Equifax's conduct, as well as that of its agents, servants and/or employees, was intentional, willful, reckless, and in grossly negligent disregard for federal laws and Plaintiff's FCRA rights.

69. Equifax's conduct was a direct and proximate cause, as well as a substantial factor, in bringing about the serious and distinct injuries to the Plaintiff that are outlined more fully above and, as a result, Equifax is liable to Mr. Emley for the full amount of statutory, actual and punitive damages, attorneys' fees and the costs of litigation, as well as such further relief as may be permitted by law for its violations of the FCRA.

## COUNT ONE – VIOLATIONS OF THE FCRA
## 15 U.S.C. § 1681e(b)

70. Plaintiff adopts and incorporates the above-numbered paragraphs as if fully stated herein.

71. Equifax willfully violated 15 U.S.C. § 1681e(b) by failing to establish and/or to follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's credit reports and credit files it published and maintained concerning Plaintiff when it reported the Inaccurate Information.

72. Alternatively, Equifax negligently violated 15 U.S.C. § 1681e(b) by failing to establish and/or to follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's credit reports and credit files it published and maintained concerning Plaintiff when it reported the Inaccurate Information.

73. As a result of Equifax's failure to comply with the requirements of the FCRA, Plaintiff suffered actual damages, described more fully above.

74. Because of Equifax's violations of the FCRA, Plaintiff seeks and is entitled to recover from Defendant actual, punitive, and statutory damages, in an amount to be determined by the jury, plus attorneys' fees and costs pursuant to 15 U.S.C. §§ 1681n and 1681o.

### COUNT TWO – VIOLATIONS OF THE FCRA
### 15 U.S.C. §§ 1681i(a), *et seq*.

75. Plaintiff adopts and incorporates the above-numbered paragraphs as if fully stated herein.

76. Equifax willfully violated 15 U.S.C. § 1681i(a)(1) by failing to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate and record the current status of the disputed information or delete each disputed item from Plaintiff's credit files.

77. In the alternative, Equifax negligently violated 15 U.S.C. § 1681i(a)(1) by failing to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate and record the current status of the disputed information or delete each disputed item from Plaintiff's credit files.

78. Equifax willfully violated 15 U.S.C. § 1681i(a)(2) by its conduct which includes, but is not limited to, failing to send to the furnisher all relevant information that it received with Plaintiff's disputes.

79. In the alternative, Equifax negligently violated 15 U.S.C. § 1681i(a)(2) by its conduct which includes, but is not limited to, failing to send to persons all relevant information that it received with Plaintiff's disputes.

80. Equifax willfully violated 15 U.S.C. § 1681i(a)(4) by failing to review and consider all relevant information submitted by Plaintiff.

81. In the alternative, Equifax negligently violated 15 U.S.C. § 1681i(a)(4) by failing to review and consider all relevant information submitted by Plaintiff.

82. Equifax willfully violated 15 U.S.C. § 1681i(a)(5)(A) by failing to promptly delete the disputed inaccurate information from Plaintiff' credit files or modify the item of information upon a lawful reinvestigation.

83. In the alternative, Equifax negligently violated 15 U.S.C. § 1681i(a)(5)(A) by failing to promptly delete the disputed inaccurate information from Plaintiff' credit files or modify the item of information upon a lawful reinvestigation.

84. As a result of Equifax's failure to comply with the requirements of the FCRA, Plaintiff suffered actual damages, described more fully above.

85. Because of Equifax's violations of the FCRA, Plaintiff seeks and is entitled to recover from Defendant actual, punitive, and statutory damages, in an amount to be determined by the jury, plus attorneys' fees and costs pursuant to 15 U.S.C. §§ 1681n and 1681o.

## COUNT THREE – VIOLATIONS OF THE FCRA
## 15 U.S.C. §§ 1681g, *et seq.*

86. Plaintiff adopts and incorporates the above-numbered paragraphs as if fully stated herein.

87. Equifax willfully violated 15 U.S.C. § 1681g(a)(1) by failing to disclose all of the Plaintiff's information that it maintained on Mr. Emley's file after receipt of Plaintiff's request.

88. In the alternative, Equifax negligently violated 15 U.S.C. § 1681g(a)(1) by failing to disclose all of Mr. Emley's information that it maintained on Plaintiff's file after receipt of his requests.

89. Equifax willfully violated 15 U.S.C. § 1681g(a)(2) by failing to disclose all the sources of the information maintained in Plaintiff's file after receipt of Plaintiff's request.

90. In the alternative, Equifax negligently violated 15 U.S.C. § 1681g(a)(2) by failing to disclose all the sources of the information maintained in Plaintiff's file after receipt of Plaintiff's requests.

91. Equifax willfully violated 15 U.S.C. § 1681g(a)(3) by failing to identify each person that procured Plaintiff's consumer report within the prior one or two years, as applicable, after receipt of Plaintiff's requests.

92. In the alternative, Equifax negligently violated § 1681g(a)(3) by failing to identify each person that procured Plaintiff's consumer report within the prior one or two years, as applicable, after receipt of Plaintiff's requests.

93. As a result of Equifax's failure to comply with the requirements of the FCRA, Plaintiff suffered actual damages, described more fully above. Further, Plaintiff suffered damages including confusion, lack of information, frustration, the inability to determine the sources of that information, the inability to determine the identities of each person who procured his file, as well as lost time.

94. Equifax's failure to disclose all information in its possession related to Plaintiff, the source of this information, and the identities of each person that procured the information maintained in its database about the Plaintiff was an act or omission committed in violation of the rights conferred to Plaintiff by Congress as set forth by 15 U.S.C. § 1681g.

95. Because of Equifax's violations of the FCRA, Plaintiff seeks and is entitled to recover from Defendant actual, punitive, and statutory damages, in an amount to be determined by the jury, plus attorneys' fees and costs pursuant to 15 U.S.C. § 1681n and § 1681o.

**COUNT FOUR – VIOLATIONS OF THE FCRA**
**15 U.S.C. §§ 1681c-1 *et seq.***

96. Plaintiff adopts and incorporates the above-numbered paragraphs as if fully stated herein.

97. In the two years preceding the date of Plaintiff's Complaint, Plaintiff requested his consumer disclosure from Equifax.

98. Equifax received Plaintiff's request for his file.

99. At the time Equifax received Plaintiff's request, Equifax included a fraud alert, as defined by 15 U.S.C. § 1681a(q)(2), in Plaintiff's file.

100. Equifax willfully violated 15 U.S.C. §§ 1681c-1(a)(2)(B) and 1681c-1(b)(2)(B) when it failed to timely, or otherwise, provide Plaintiff with his consumer disclosure.

101. In the alternative, Equifax negligently violated 15 U.S.C. §§ 1681c-1(a)(2)(B) and 1681c-1(b)(2)(B) when it failed to timely, or otherwise, provide Plaintiff with his consumer disclosure.

102. As a result of Equifax's failure to comply with the requirements of the FCRA, Plaintiff suffered actual damages, described more fully above.

103. Because of Equifax's violations of the FCRA, Plaintiff seeks and is entitled to recover from Defendant actual, punitive, and statutory damages, in an amount to be determined by the jury, plus attorneys' fees and costs pursuant to 15 U.S.C. §§ 1681n and 1681o.

### COUNT FIVE – VIOLATIONS OF THE FCRA
### 15 U.S.C. §§ 1681c-2, *et seq*.

104. Plaintiff adopts and incorporates the above-numbered paragraphs as if fully stated herein.

105. Plaintiff provided Equifax with proof of his identity.

106. Plaintiff provided Equifax with a copy of an identity theft report.

107. In his disputes, Plaintiff identified the items of information that appeared in his Equifax file due to identity theft.

108. Equifax willfully violated 15 U.S.C. § 1681c-2(a) by failing to timely block the disputed items of information.

109. In the alternative, Equifax negligently violated 15 U.S.C. § 1681c-2(a) by failing to timely block the disputed items of information.

110. Equifax willfully violated, upon information and belief, 15 U.S.C. § 1681c-2(b) when it failed to notify the furnisher of the disputed items of information may be the result of identity theft, that an identity theft report has been filed, that a block has been requested, or the effective dates of the block.

111. In the alternative, Equifax negligently upon information and belief, 15 U.S.C. § 1681c-2(b) when it failed to notify the furnisher of the disputed items of information may be the result of identity theft, that an identity theft report has been filed, that a block has been requested, or the effective dates of the block.

112. Equifax willfully violated 15 U.S.C. § 1681c-2(c)(2) when it failed to timely notify Plaintiff of its decision to decline to block the disputed items of information.

113. In the alternative, Equifax negligently violated 15 U.S.C. § 1681c-2(c)(2) when it failed to timely notify Plaintiff of its decision to decline to block the disputed items of information.

114. As a result of Equifax's failure to comply with the requirements of the FCRA, Plaintiff suffered actual damages, described more fully above.

115. Because of Equifax's violations of the FCRA, Plaintiff seeks and is entitled to recover from Defendant actual, punitive, and statutory damages, in an amount to be determined by the jury, plus attorneys' fees and costs pursuant to 15 U.S.C. §§ 1681n and 1681o.

## JURY DEMAND

116. Plaintiff requests a jury trial on all claims.

## PRAYER

Wherefore, Plaintiff prays for judgment against Defendant as follows:

**On the First Claim for Relief**:

1. Actual damages to be determined by the jury;
2. Punitive damages to be determined by the jury;
3. Statutory damages to be determined by the jury;
4. Attorneys' fees and costs; and,
5. Granting further relief, in law or equity, as this Court may deem appropriate and just.

**On the Second Claim for Relief:**

1. Actual damages to be determined by the jury;
2. Punitive damages to be determined by the jury;
3. Statutory damages to be determined by the jury;
4. Attorneys' fees and costs; and,
5. Granting further relief, in law or equity, as this Court may deem appropriate and just.

**On the Third Claim for Relief:**

1. Actual damages to be determined by the jury;
2. Punitive damages to be determined by the jury;
3. Statutory damages to be determined by the jury;
4. Attorneys' fees and costs; and,

5. Granting further relief, in law or equity, as this Court may deem appropriate and just.

**On the Fourth Claim for Relief:**

1. Actual damages to be determined by the jury;

2. Punitive damages to be determined by the jury;

3. Statutory damages to be determined by the jury;

4. Attorneys' fees and costs; and,

5. Granting further relief, in law or equity, as this Court may deem appropriate and just.

**On the Fifth Claim for Relief:**

6. Actual damages to be determined by the jury;

7. Punitive damages to be determined by the jury;

8. Statutory damages to be determined by the jury;

9. Attorneys' fees and costs; and,

10. Granting further relief, in law or equity, as this Court may deem appropriate and just.

Respectfully submitted,

*/s/ Micah S. Adkins*
Micah S. Adkins
(attorney-in-charge)
TX BAR NO. 24088777
**THE ADKINS FIRM, P.C.**
8150 N. Central Expressway, Suite 1000
Dallas, Texas 75206
(214) 974-4030 Main Telephone
MicahAdkins@ItsYourCreditReport.com
*COUNSEL FOR PLAINTIFF
CHARLES GREGORY EMLEY*

18